IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       *Plaintiff*,<br><br>v.<br><br>MAURICE DEMERY,<br><br>       *Defendant*. | Criminal No. 14-106 |

**OPINION**

CONTI, Senior District Judge.

**I.**    **Introduction**

Pending before the court is a "motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" (ECF No. 740) by defendant Maurice Demery ("Demery"). Demery seeks release under 18 U.S.C. § 3582(c)(1)(A), which known as the "compassionate release" provision of the statute. United States v. Handerhan, 789 F. App'x 924, 925 (3d Cir. 2019) (per curiam). Demery argues that he is entitled to compassionate release because his obesity and the outbreak of COVID-19 at Federal Correctional Institution Morgantown where he is incarcerated represent extraordinary and compelling reasons and the factors set forth in 18 U.S.C. § 3553(a) warrant his immediate release. (ECF Nos. 740, 745.) The government concedes that Demery satisfied his burden to show that extraordinary and compelling reasons exist for his compassionate release but argues the § 3553(a) factors show that the original 7-year term of imprisonment imposed upon Demery remains the appropriate sentence in this case. (ECF No. 742.)

For the reasons set forth in this opinion, the court finds that compassionate release is appropriate, and Demery shall be released from imprisonment. Demery, who is 44 years old, satisfied his burden to show that extraordinary and compelling reasons exist in this case, i.e., his obesity coupled with his prediabetes and the outbreak of COVID-19 at FCI Morgantown, and the § 3553(a) factors warrant his compassionate release. The court will, therefore, grant Demery's motion for a reduced sentence and modify his sentence to a term of imprisonment of time served and a term of supervised release of 5 years, with a condition added to his term of supervised release that for the first 11-months of the term of supervised release he will be subject to home detention with electronic monitoring at the discretion of the probation officer. All conditions of supervised release previously imposed upon Demery on September 6, 2017, shall remain in full force and effect. Demery shall be forthwith released from the custody of the Federal Bureau of Prisons ("BOP") with the understanding that if he receives a positive COVID-19 rapid test result, the court will be notified prior to his release.

**II.     Procedural History**

On May 10, 2017, Demery pleaded guilty to a lesser included offense at count 1 of the second superseding indictment, i.e., conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, a Schedule I controlled substance, from December 2013 to April 2014, in violation of 21 U.S.C. § 846. (ECF No. 529.) Demery entered into a binding plea agreement in accordance with Federal Rule Criminal Procedure 11(c)(1)(C), pursuant to which he agreed that the appropriate sentence in this case was a term of imprisonment of 84 months and a term of supervised release of 4 years (48 months). On September 6, 2017, this court, after consideration of the factors set forth in 18 U.S.C. § 3553(a), accepted the binding plea agreement and imposed upon Demery the sentence agreed upon by the parties, i.e., a term of imprisonment of 84 months and a term of supervised release of 4 years (48 months). (ECF No. 567.)

On October 15, 2020, Demery filed the pending motion for reduced sentence. (ECF No. 740.) On November 3, 2020, the government filed a response in opposition to Demery's motion. (ECF No. 742.) On December 2, 2020, Demery filed a supplement to his motion in which he explained that the active cases of COVID-19 among the inmates at FCI Morgantown increased from the 9 he reported to the court in his motion on October 15, 2020, to 30 as of the date of the supplement. (ECF No. 745.) On December 3, 2020, the court issued an order scheduling a hearing on Demery's motion for reduced sentence and ordering, among other things, Demery to present evidence in support of his motion. (ECF No. 746.)

On December 16, 2020, an evidentiary hearing[1] was held on Demery's motion.[2] (Hearing Transcript ("H.T.") 12/16/2020.) Demery presented the expert testimony of Dr. Amesh Adalja ("Adalja"), an expert in the fields of infectious disease, critical care and the COVID-19 pandemic, and entered into evidence Adalja's curriculum vitae (Def. Ex. A) and report with respect to this case (Def. Ex. B). (H.T. 12/16/2020 at 11-19.) Demery also presented the testimony of his fiancé, Antoinette Adams ("Adams"), with whom he intended to live upon his release from imprisonment. (Id. at 22-29.) The government entered into evidence a computation of Demery's prison time (Gov't Ex. 1) by the BOP. (H.T. 12/16/2020 at 44-45.) The government made a proffer with respect to the testimony an official from the BOP would give if he or she was available to testify at the hearing about the COVID-19 mitigation efforts by the BOP and FCI Morgantown. (Id. at 30-31.) Demery's counsel did not object to the proffer. (Id. at 32.) As set forth in its briefing, the

---

[1] The Honorable Mark R. Hornak presided over the evidentiary hearing, pursuant to Federal Rule of Criminal Procedure 25(b). (H.T. 12/16/2020 at 2-3.)

[2] The court found at the evidentiary hearing that Demery knowingly and voluntarily waived any right he had to appear in person at the evidentiary hearing and knowingly and voluntarily agreed to appear at the hearing via telephone from FCI Morgantown, which did not have the ability to provide for Demery's appearance via video. (H.T. 12/16/2020 at 4-10.)

3

government conceded that Demery's obesity constituted an extraordinary and compelling reason as contemplated by 18 U.SC. § 3582(c)(1)(A). The parties disagreed, however, about whether the factors set forth in 18 U.S.C. § 3553(a) warranted Demery's immediate release. The court ordered an expedited copy of the transcript and took the matter under advisement for the undersigned judge to decide.

On December 22, 2020, the undersigned judge held a hearing at which Adams presented additional testimony and the court discussed Demery's release plans with Demery, Adams, the counsel, his case manager from FCI Morgantown, and the probation office.

The motion for reduced sentence having been fully briefed and subject of an evidentiary hearing is now ripe for disposition.

### III.    Discussion

#### A.   Applicable Law

Demery seeks compassionate release from imprisonment. A district court, however, has only *limited* authority to "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); United States v. Savani, 733 F.3d 56, 60 (3d Cir. 2013). The Third Circuit Court of Appeals has recognized that Congress enacted exceptions to this "general rule of finality" in 18 U.S.C. § 3582(c)(1). United States v. Easter, 975 F.3d 318, 323 (3d Cir. 2020) (explaining that "[s]entence modifications under § 3582(c) constitute 'exception[s] to the general rule of finality' of sentences") (quoting Dillon v. United States, 560 U.S. 817, 824 (2010)).

Section 3582(c)(1)(A) provides:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case--
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully

> exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). The foregoing statutory provision sets forth a *three-part analysis* for district courts to utilize to resolve a motion for compassionate release. The Third Circuit Court of Appeals has instructed that pursuant to § 3582(c)(1)(A), "a district court 'may reduce [a federal inmate's] term of imprisonment' and 'impose a term of probation or supervised release … if it finds that … extraordinary and compelling reasons warrant such a reduction.'" United States v. Pawlowski, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). "[B]efore granting compassionate release," however, "a district court must 'consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)). The court must also consider whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A). United States v. Doe, No. 20-2650, 2020 WL 6328203, at *1, n.2 (3d Cir. Oct. 29, 2020).

Based upon the foregoing, to grant Demery compassionate release under § 3582(c)(1)(A), the court must analyze whether: (1) extraordinary and compelling reasons exist for his release; (2) compassionate release is warranted in consideration of the § 3553(a) factors;[3] and (3) compassionate release is consistent with applicable policy statements issued by the Sentencing Commission.

Demery bears the burden of proof by a preponderance of the evidence to show that he is entitled to compassionate release. United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citing United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020)). Courts have held that to satisfy this burden, a movant must produce *evidence* to the court. See e.g., United States v. Matthews, Crim. Action No. 09-612-1, 2020 WL 5217132, at *6 (E.D. Pa. Sept. 1, 2020); United States v. Brunetti, Crim. Action No. 2020 WL 4516541, at *6 (E.D. Pa. July 31, 2020); United States v. Richardson, Crim. No. 18-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020).

### A. Extraordinary and Compelling Reasons

---

[3] The factors set forth in 18 U.S.C. § 3553(a) are:

- the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);
- the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);
- the sentencing range established by the Sentencing Commission, § 3553(a)(4);
- any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);
- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

Prior to the enactment of the First Step Act on December 21, 2018, § 3582(c)(1)(A) provided that only the Director of the Bureau of Prisons ("BOP") could file a motion for a sentence reduction under § 3582(c)(1)(A)(i). Ray v. Finley, No. 3:19-CV-0988, 2019 WL 5569616, at *3 (M.D. Pa. Oct. 29, 2019). The First Step Act amended § 3582(c)(1)(A), which now provides that "a motion for reduction in sentence may be filed by either the Director of the BOP or a federal inmate" after the federal inmate exhausts administrative remedies.[4] Id.

"Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation…alone' does not suffice." Adeyemi, 2020 WL 3642478, at *7 (quoting 28 U.S.C. § 994(t)). The Third Circuit Court of Appeals has explained that "compelling and extraordinary" reasons for the reduction of a sentence are "defined by the commentary to policy statement U.S.S.G. § 1B1.13." Handerhan, 789 F. App'x at 925 (citing United States v. Barberena, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). "That commentary currently lists four categories of such reasons: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) 'other reasons' as determined by the Director of the Bureau of Prisons." Id. (quoting U.S.S.G. § 1B1.13 cmt. n.1.). The court in Adeyemi explained the first three categories as follows:

> The first category includes incarcerated persons suffering from terminal illnesses, such as metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia, or those suffering from medical conditions, impairments, or deteriorations due to age that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."…The second category includes incarcerated persons who are at least sixty-five years old, experience a serious deterioration in physical or mental health because of the aging process; and have served at least ten years or seventy-five percent of their term of imprisonment, whichever is less….The third extraordinary and compelling reason may arise where the primary caregiver of the incarcerated person's minor child or

---

[4] The government concedes that Demery exhausted his administrative remedies within the BOP before filing his motion for reduced sentence with this court. (H.T. 12/16/2020 at 9.)

children died or became incapacitated or where the incarcerated person's spouse became incapacitated and he is the only available caregiver for the spouse.

Adeyemi, 2020 WL 3642478, at *7 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)).

The court of appeals in Handerhan explained that "[t]he Sentencing Commission has not yet amended § 1B1.13 or its commentary to account for the First Step Act…[and] the District Courts are divided on whether and how to apply the catch-all 'other reasons' category and its reference to determinations made by the Director." Handerhan, 789 F. App'x. at 925 n.1 (citing United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *2 (D. Me. July 11, 2019)). While U.S.S.G. § 1B1.13 was not updated to reflect the First Step Act amendments, the Commission's policy statement "does not constrain a court's independent assessment about whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." United States v. Somerville, No. 2:12-CR-225-NR, 2020 WL 2781585, at *6-7 (W.D. Pa. May 29, 2020) (holding the court has authority to independently assess whether there are "extraordinary and compelling reasons" to reduce a defendant's sentence).[5]

"The starting point in discerning congressional intent is the existing statutory text[.]" Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004). "Extraordinary and compelling" is not defined by statute, and, therefore, the court must give the terms their "'ordinary meaning.'" United States v. Diallo,

---

[5] This conclusion is shared by a "vast majority" of courts that considered "whether courts may independently evaluate extraordinary and compelling reasons to reduce sentences" under the catchall provision of U.S.S.G. § 1B1.13. Adeyemi, 2020 WL 3642478, at *10 (collecting decisions); United States v. Andrews, Crim. Action No. 05-280-02, 2020 WL 4812626, at *3 (E.D. Pa. Aug. 19, 2020) (finding that district courts "overwhelmingly conclude that a court can make an independent determination of what constitutes extraordinary and compelling reasons"). For example, the court in Adeyemi explained that the directive in U.S.S.G. § 1B1.13 that the Director of the BOP determines whether "other reasons" exist for the compassionate release of a defendant is not authoritative because it contradicts with the plain language of 18 U.S.C. § 3582(c)(1)(A), which requires the court to find extraordinary and compelling reasons for a defendant's release. Adeyemi, 2020 WL 3642478, at *14-15 (citing United States v. LaBonte, 520 U.S. 751, 764 (1997); Stinson v. United States, 508 U.S. 36, 37 (1993)).

575 F.3d 252, 256 (3d Cir. 2009) (quoting Moskal v. United States, 498 U.S. 103, 108 (1990)).

The court in Somerville explained:

> The word "extraordinary" is commonly understood to mean "going beyond what is usual, regular, or customary," or "exceptional to a very marked extent." *Extraordinary*, Merriam-Webster Dictionary (2020); see also *Extraordinary*, Black's Law Dictionary (11th ed. 2019) ("Beyond what is usual, customary, regular, or common.").
>
> The word "compelling" means "forceful," "demanding attention," or "convincing." *Compelling*, Merriam-Webster Dictionary (2020); see also *Compelling Need*, Black's Law Dictionary (11th ed. 2019) ("A need so great that irreparable harm or injustice would result if it is not met.").
>
> Thus, at a minimum, § 3582(c)(1)(A)(i) requires a justification for release that is both unusual (i.e., unique to the inmate, and beyond the ordinary hardship of prison) and significant (i.e., serious enough to make release appropriate).

Somerville, 2020 WL 2781585, at *7.

The court in Somerville considered decisions from federal courts across the United States in which incarcerated defendants sought compassionate release in light of the COVID-19 pandemic and established a two-part analysis for courts to use to determine whether the COVID-19 pandemic represents extraordinary and compelling reasons for a defendant's release. Id. at *4. The court explained:

> While the Third Circuit has not articulated a definitive standard to be applied to § 3582(c) motions in this context, it has observed generally that the mere "existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner[.]" United States v. Roeder, 807 Fed.Appx. 157, 161 n.16 (3d Cir. 2020). From that, the Court infers that a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a ***uniquely high risk*** of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held.

Id. (emphasis added). The court's reasoning in Somerville is sound, and, therefore, the court will apply the two-part test to Demery's case to determine whether he set forth extraordinary and

9

compelling reasons for his release based upon his obesity and the COVID-19 conditions at FCI Morgantown.

Demery argues that his obesity places him at a uniquely high risk of grave illness if he contracts COVID-19, (ECF No. 740 at 5-6), a point that the government does not contest, (ECF No. 742 at 6). Demery offered evidence to show that his "body mass index" is 36.9, (ECF No. 740-6 at 1), which is considered obese, (H.T. 12/16/2020 at 15). Adalja explained that "[p]eople with obesity, everything being equal, have a much higher chance of having a severe case of COVID-19 than someone who is not obese." (H.T. 12/16/2020 at 15.) The Centers for Disease Control and Prevention (the "CDC") recognizes that being obese places adults "at increased risk of severe illness from the virus that causes COVID-19." CENTERS FOR DISEASE CONTROL AND PREVENTION, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited December 21, 2020); United States v. Butler, No. CR 10-612, 2020 WL 5369753, at *2 (E.D. Pa. Sept. 8, 2020) ("Butler's obesity alone puts him at risk of serious illness should he contract COVID-19."). This court has recognized that "[a] person with a BMI of 48 (i.e., morbidly obese)…would pose greater concern than a person with a BMI of 31 (i.e., slightly obese)." United States v. Grasha, No. CR 18-325, 2020 WL 5747829, at *4 (W.D. Pa. Sept. 24, 2020).

Demery also points to his prediabetes and possible sleep apnea[6] as medical conditions that increase his risk of grave illness if he contracts COVID-19. Adalja testified as follows with respect to Demery's prediabetes:

> Prediabetes and diabetes are both metabolic conditions that decrease your ability to fight off any kind of infection. Many times with people with these

---

[6] Adalja explained that Demery is undergoing an evaluation for sleep apnea, but Demery has not received a diagnosis of sleep apnea. (H.T. 12/16/2020 at 20.) Because at this time Demery is not diagnosed with sleep apnea, the court cannot consider that matter to increase his risk of grave illness if he contracts COVID-19.

conditions, you find much more severe manifestations of the disease, higher rates of hospitalization.

That's been seen during this pandemic specifically with diabetes, but he is on a spectrum to develop diabetes, and although he doesn't bear the full diagnosis of diabetes, prediabetes is concerning enough that I would be much more worried about a severe case occurring in him.

(H.T. 12/16/2020 at 16.)

Based upon the foregoing, including the government's concession that Demery's obesity constitutes an extraordinary and compelling reason for his compassionate release, the court finds that Demery satisfied his burden to show that it is more likely than not that Demery is at a uniquely high risk to suffer grave illness or death if he contracts COVID-19.

Demery must also show that there exists an actual, non-speculative risk of exposure to COVID-19 at FCI Morgantown. The BOP reports that FCI Morgantown houses approximately 464 inmates. Federal Bureau of Prisons, FCI Morgantown, https://www.bop.gov/locations/institutions/mrg/ (last visited on December 22, 2020). As of the date of this opinion, the BOP reports that 63 inmates and 5 staff members are currently infected with COVID-19 at FCI Morgantown.[7] FEDERAL BUREAU OF PRISONS, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited December 22, 2020). Sixty-seven other inmates have recovered from the virus. Thus, 130 inmates were or currently are infected with COVID-19 at FCI Morgantown. (Id.)[8]

---

[7]   Thus, as of the date of this opinion, approximately 13.5% of the inmates at FCI Morgantown are infected with COVID-19. The numbers at FCI Morgantown are everchanging. As of December 16, 2020 (the date of the hearing in this case) and until at least December 18, 2020, the BOP reported that **125 inmates** and two staff members were infected with COVID-19 at FCI Morgantown. FEDERAL BUREAU OF PRISONS, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited December 18, 2020); (H.T. 12/16/2020 at 31, 33-34.)

[8]   According to the BOP, no inmates or staff have died from COVID-19 at FCI Morgantown. Federal Bureau of Prisons, *FCI Morgantown*, https://www.bop.gov/locations/institutions/mrg/

The government offered the following proffer about the COVID-19 mitigation efforts at FCI Morgantown to which Demery did not object:

> A moratorium was approved on December 3, 2020. The moratorium ceases incoming and outgoing inmate movement until December 23rd of 2020. Visitation for the inmate population has been suspended until further notice. Inmate movement within the institution has been suspended, and staff have been reassigned to alternate areas of the institution to reduce cross contamination when possible.
>
> The safety department at FCI Morgantown continues to distribute cleaning supplies throughout the institution as needed. These include but are not limited to cleaning chemicals, spray bottles, cleaning rags and applicators and equipment necessary to perform cleaning tasks. As of December 9, 2020, one inmate was symptomatic and all others were asymptomatic.

(H.T. 12/16/2020 at 31.) Despite this proffer, Adalja testified that because of the congregate nature of incarceration, prisons "have been hit fairly hard" by COVID-19 because it is "much harder" to use mitigation efforts like social distancing in those settings. (H.T. 12/16/2020 at 17, 20.) In light of the high percentage of inmates at FCI Morgantown that have contracted COVID-19 despite the prison's mitigation efforts, the court concludes that the risk that there is an actual, non-speculative risk that Demery will become infected with COVID-19 while incarcerated at FCI Morgantown.

Based upon the foregoing, Demery satisfied his burden to show that he is at a uniquely high risk of suffering grave illness or death if he contracts COVID-19 and there exists an actual, non-speculative risk that he will contract the disease while incarcerated at FCI Morgantown.

### B. Factors set forth in 18 U.S.C. § 3553(a)

Having found that there exist extraordinary and compelling reasons exists for Demery's compassionate release from imprisonment, the court must consider the factors set forth in 18 U.S.C. § 3553(a) to determine whether the sentence requested by Demery is the appropriate

---

(last visited on December 22, 2020).

sentence in this case. As discussed above, this court imposed upon Demery the agreed-upon sentence of a term of imprisonment of 84 months and a term of supervised release of 4 years. Demery has been incarcerated for approximately 44 months. (Gov't Ex. 1 at 2.) He has approximately 17 months remaining on his 7-year sentence, which includes good time he accrued while incarcerated and a 12-month reduction for participating in the residential drug treatment program. (Gov't Ex. 1.) He is scheduled to be released from BOP custody on May 25, 2022. (Gov't Ex. 1.) He is eligible for home detention in 11 months—November 25, 2021. (Id.) The court finds that in consideration of the extraordinary and compelling reasons set forth by Demery and the § 3553(a) factors, the appropriate sentence in this case is a term of imprisonment of time served (44 months) and a term of supervised release of 5 years, the first 11 months of which shall be served on home detention with electronic monitoring at the discretion of the probation officer. All other conditions of supervised release imposed upon Demery on September 6, 2017 shall remain in full force and effect.

1. **The nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1)**

As this court explained at the time of sentencing, Demery played a role in a large-scale and extremely dangerous heroin conspiracy. Heroin has devastating effects on the community and destroys many lives. The parties at the hearing on Demery's motion for reduced sentence argued about Demery's role in the offense. The court finds that Demery's role in the offense is appropriately reflected by his plea to a lesser included offense at count one and agreement to a term of imprisonment above the high-end of the guideline range.[9] Demery did not receive any

---

[9] Counsel for Demery explained to the court during the evidentiary hearing that if Demery went to trial and was convicted on the charges contained in the second superseding indictment—as opposed to accepting a Rule 11(c)(1)(C) plea agreement for the lesser included offense at count one and agreeing to a term of imprisonment of 84 months—the statutory minimum term of imprisonment would have been 120 months. (H.T. 12/16/2020 at 54-55.)

13

sentencing adjustments for playing an "aggravating" or "mitigating" role in the offense. See (ECF No. 546 ¶ 29); U.S.S.G. §§ 3B1.1, 3B1.2. As provided for in the presentence investigation report, Che Hawkins provided heroin to Demery, among others, for distribution, and the amount of heroin attributable to Demery was more than 700 grams, but less than 1 kilogram. (ECF No. 546 ¶¶ 11-21.)

With respect to Demery's history and characteristics, at the time he was originally sentenced in this case, he had zero criminal history points. He was a semi-professional football player who gave back to his community via a youth football program that provided, among other things, training and lunch to 70 children. Demery's counsel advised the court that Demery wants to use his experience to help other avoid his "pitfalls[.]" (H.T. 12/16/2020 at 38.) Demery's counsel also advised the court that Demery is participating in the residential drug treatment program at FCI Morgantown, he obtained a welding certificate, and took leather working classes. (Id. at 39.)

Demery continues to have the support[10] of his fiancé, Adams, with whom he has been in a relationship with for 25 years. (H.T. 12/16/2020 at 23.) Demery has gained weight since his incarceration, is currently obese, has prediabetes, and is being evaluated for sleep apnea.

Demery's home plan includes living with Adams and their two children. (Id. at 25-26.) Adams has a home and is currently employed. (Id. at 27.) Adams testified that there are neither drugs nor firearms in the home and law enforcement would be permitted to inspect the home

---

[10] Demery's counsel also reported during his argument to the court that:

> [Demery] also has very close ties to his mother, Elizabeth Cheatom. He indicates that his mother is available to help him with job opportunities upon his release, and he has expressed the goal of working with children, spreading his message.

(H.T. 12/16/2020 at 37.)

and "check up on" Demery at the home. (Id. at 25.) On cross-examination, Adams testified that Demery lived with her during the time his criminal activity in this case took place and that she knew he was dealing in heroin. (Id. at 27.) At the hearing held on December 22, 2020, Adams testified that she will not tolerate Demery engaging in criminal activity upon his release and that if he engages in criminal behavior, he will not be welcomed in her home. Adams will financially provide for Demery until he obtains gainful employment.

The government noted that pending conviction in this case, Demery's bond was revoked after a petition was filed by the probation officer alleging that Demery was untruthful with respect to his employment and whereabouts. (ECF Nos. 520, 525.) Demery did not contest the revocation of his bond. (ECF No. 525.) As Demery's counsel points out, the revocation was not based upon new criminal activity. (H.T. 12/16/2020 at 52-53.) The court instructed Demery at the hearing on December 22, 2020, that any violations of the conditions of his supervised release will be taken very seriously by the court.

> **2. The need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D)**

The sentence to be imposed, i.e., a term of imprisonment of time served and a term of supervised release of 5 years, with the first 11 months to be served on home detention with electronic monitoring at the discretion of the probation officer, is a significant sentence. The sentence, which includes lengthy terms of imprisonment and supervised release, affords adequate deterrence to criminal conduct and protects the public from Demery committing crimes in the future. Demery is participating in the residential drug treatment program while incarcerated. He will be on supervised release for 5 years, which should provide him time to obtain alcohol and substance abuse treatment (if needed), secure gainful employment, and lead

a law-abiding life. The court believes Demery, who stated on the record that he is a changed person and will live a law-abiding life upon release, will be adequately deterred from engaging in criminal conduct and enabled to live a law-abiding life.

### 3. The sentencing range established by the Sentencing Commission, § 3553(a)(4).

The sentencing range for a term of imprisonment applicable to Demery is 60 to 71 months. The term of imprisonment of time served, i.e., 44 months, is below the statutory-mandated minimum term of imprisonment and guideline range for a term of imprisonment of 60 months. A variance is warranted in this case, however, because Demery is at a uniquely high risk of suffering grave illness or death if he continues to be incarcerated at FCI Morgantown. The court will impose a term of supervised release of 5 years, which is at the high-end of the guideline range for supervised release of 4 years to 5 years. The additional year of supervised release is warranted by the reduction in his term of incarceration.

### 4. Any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5)

Demery does not point to any pertinent policy statements in support of his motion. The government argues that Demery failed to show that he is not a danger to the community in accordance with the policy statement set forth in U.S.S.G. § 1B1.13. According to Demery, he was sanctioned for possession of a cellular telephone while incarcerated on August 9, 2019. (EF No. 740 at 12.) The court did not receive any other evidence to show that Demery while incarcerated continued to commit crimes, was violent, or was involved in other nefarious activity; indeed, Demery is participating in the residential drug treatment program and the government does not contest that he is eligible to be placed on home detention by the BOP in 11 months. The court, therefore, finds that it is more likely than not that Demery upon release from imprisonment and while on supervised release for 4 years will not be a danger to the

community.

### 5. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6)

The court does not discern any unwarranted sentencing disparities created by the sentence requested by Demery because of his obesity and the COVID-19 conditions at FCI Morgantown.

### 6. The need to provide restitution to any victims of the offense, § 3553(a)(7).

Although there are many victims to large-scale heroin trafficking, the law does not provide for restitution to those persons. This factor, therefore, is inapplicable in this case.

### C. Conclusion

Demery satisfied his burden to show that his obesity coupled with his prediabetes and the COVID-19 conditions at FCI Morgantown constitute extraordinary and compelling reasons for his compassionate release. The court finds that in light of the § 3553(a) factors discussed above and because the serious health risks posed to Demery by the conditions at FCI Morgantown during the COVID-19 pandemic, a term of imprisonment of time served and a term of supervised release of 5 years, with the first 11 months to be served on home detention with electronic monitoring at the discretion of the probation officer, is sufficient, but not greater than necessary to fulfill the purposes of sentencing. The court will, therefore, grant Demery's motion for reduced sentence. He shall be forthwith released from the custody of the BOP with the understanding that if he receives a positive COVID-19 rapid test result, the court will be notified prior to his release. All conditions of supervised release previously imposed upon Demery on September 6, 2017 shall remain in full force and effect.

## IV. Conclusion

The motion to reduce sentence (ECF No. 740) filed by Demery will be granted.

An appropriate order will be entered.

BY THE COURT:

Dated: December 22, 2020

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Senior United States District Court Judge